**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CATHY RODRIGUEZ, on behalf of themself and all others similarly situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| SHARKNINJA OPERATING LLC, D/B/A NINJA®, a Massachusetts Limited Liability Company, | |
| Defendant. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Cathy Rodriguez (Plaintiff), by and through their attorneys, bring this action against SharkNinja Operating LLC, d/b/a Ninja® (Defendant). Plaintiff alleges the following based on personal knowledge as to their own acts and based upon the investigation conducted by their counsel as to all other allegations:

### INTRODUCTION

1.      Plaintiff brings this class action against Defendant for selling its "Ninja" branded electric pressure cookers, including but not limited to the Foodi OP300 Series Multi-Function Pressure Cookers product line (the Products).[1]

2.      The Products have a dangerously defective lid-locking assembly, allowing the lid to open while the contents of the cooker are under pressure during normal and expected use, so

---

[1] This product line includes, but is not limited to, the following model numbers: P300, OP301, OP301A, OP302, OP302BRN, OP302HCN, OP302HAQ, OP302HW, OP302HB, OP305, OP305CO and OP350CO.

that its super-heated contents erupt from the cooker. This scalds consumers with second-degree and third-degree burns (the Defect).

3.    Defendant has been aware of the Defect, which is dangerous, for years, but Defendant fraudulently concealed the Defect, failed to disclose it, and continued to sell Products that had the defective lid-locking assembly.

4.    By selling a dangerously defective product, Defendant violated the Uniform Commercial Code's (UCC) warranty provisions, the Song-Beverly Consumer Warranty Act, and California consumer protection statutes.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) because members of the putative class are citizens of a state different from Defendant and the amount in controversy exceeds $5,000,000 before interest and costs.

6.    This Court has personal jurisdiction over Defendant. Defendant's United States headquarters is in this Division of this District, and Defendant advertises and sells the Products to prospective customers in this District. Defendant distributed the Products to Massachusetts consumers. This distribution included distribution through Defendant's own website and third-party retailers, which sold the Products to Massachusetts consumers. Defendant marketed the Products on the internet, and Defendant expected and knew that Massachusetts would purchase some of those Products in the state of Massachusetts.

7.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District.

## PARTIES

8.    Plaintiff Cathy Rodriguez resides in West Covina, California, and is a citizen of the

state of California. Plaintiff purchased one of the Products in approximately 2023. Prior to purchasing it, Plaintiff read the labeling that identified it as a pressure cooker. Plaintiff believed that it would safely function as a pressure cooker and would be able to hold pressure at normal cooking temperatures without failing.

9.      Had Plaintiff known that the Product did not safely pressure cook and could fail, she would not have made that purchase. In that purchase, Plaintiff paid a premium. Had she known about the Defect, she would have never paid that premium.

10.      Plaintiff would likely purchase Sharkninja Products in the future if Defendant corrects the problems alleged herein so that the Products would function safely.

11.      Defendant Sharkninja Operating LLC, doing business as Ninja®, is a Massachusetts Limited Liability Company with its principal place of business in Needham, MA. Defendant Sharkninja Operating LLC manufactured, distributed, retailed and warranted the Products in the United States during the relevant time period.

## FACTUAL ALLEGATIONS

12.      At all times relevant to the issues alleged in this Complaint, Defendant was engaged in the business of designing, manufacturing, importing, marketing, labeling, distributing, selling, and/or introducing into interstate commerce the "Ninja®" branded kitchen appliances, including the Products.

13.      The Products were marketed as a multifunction kitchen appliance, which could pressure cook, slow cook, sauté, etc., but, the primary use of the Products was its pressure-cooking feature, which cannot be duplicated by other common kitchen equipment or tools. By using pots and pans on a consumer's range or in their oven, one can achieve many of the Products' other functions, but pressure-cooking food requires specialty equipment, which can often be intimidating

to consumers due to safety concerns. Traditional pressure-cooking pots can be dangerous and difficult to use when used by the average home cook. Defendant marketed the Products as easy, convenient, and safe ways to pressure cook in a consumer's own home.

14.     Defendant authored and/or approved the information that appears in the Owner's Guide for the Products and on the labels of the Products.

15.     The Products are sold on Defendant's website, www.Ninjakitchen.com, as well as through third-party retailers such as Walmart, Costco, Sam's Club, Amazon, and Target. Defendant often provides information, including identification of the Products as pressure cookers, that appears on the websites of these third-party retailers. The Products were sold January 2019 through March 2025 for about $200.

16.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner.

17.     Defendant provides a one-year limited warranty, on the Products, that covers any "defects in material and workmanship" if "used under normal household conditions." In the Owner's Guide included in each of the Products, Defendant extends this warranty directly to consumers.

18.     Defendant manufactured the Products with the specification that the lid cannot be opened while the contents of the pot are under pressure. This is a key feature of any pressure cooker. Without such features, a pressure cooker could open while the pressure cooker is still under pressure. This could lead to the ejection of hot food, liquid, or steam, causing serious burns. Accordingly, any defect in the lid of a pressure cooker renders it neither passable without objection in the trade under the contract description nor fit for the ordinary purposes for which ordinary consumers use such goods.

19.    Indeed, Underwriters Laboratories Listing, UL 9H06 E214884, provided that when a pressure cooker is under pressure the cover (or lid) should not be able to be opened by applying a rotational force of 100 pounds (445 N) or less, with the force to be applied gradually. Thus, it is an industry standard that a pressure cooker should not be able to be opened under pressure, without exerting significant force.

20.    Indeed, Defendant is aware of the dangers associated with prematurely opening a pressure cooker's lid. The Products' Owner's Guide acknowledges that: "Serious burns can result from the steam and hot foods inside the inner pot." The Owner's Guide also notes that if "the lid will not turn to unlock, this indicates the appliance is still under pressure." The Owner's Guide further provides that:

> As a safety feature, the pressure lid will not unlock until the unit is completely depressurized. To release pressure, turn the pressure release valve to the VENT position to quick release the pressurized steam. A quick burst of steam will spurt out of the pressure release valve. When the steam is completely released, the unit will be ready to open. To unlock the pressure lid, turn it counterclockwise. Lift the lid at an angle to prevent splatter. Do not lift the lid straight up.

For two reasons, reasonable consumers may believe that they can safely determine, after the cooking is complete, whether the Products are still under pressure by attempting to open the Products; they would reasonably assume that if the Products are still under pressure, they will not open. First, these Products, and similar pressure cookers, will not open under pressure. Second, the Owner's Guide instructs that: "When the steam is completely released, the unit will be ready to open."

21.    For example, as recognized in the Products' Owner's Guide, "[w]hen pressure cooking is complete, steam will naturally release from the unit as it cools down. This can take up to 20 minutes or more, depending on the amount of liquid and food in the pot." The manual also notes that: (a) "The pressure lid will not unlock until the unit is completely depressurized" and (b) "[T]he lid will lock as a safety measure, and it will not unlock until pressure is released." In its frequently asked questions section, Defendant's own website notes the same: "Can I open the pressure lid at any time during cooking?... No, as the unit builds pressure, the float valve will rise, and the lid will lock as a safety measure. It will not unlock until pressure is released and the float valve drops down, signaling it is safe to open the lid."[2] Thus, reasonable consumers would understand, based on the Owner's Guide and Defendant's advertising, that the Products should not open if under pressure, and Defendant represents and warrants that the Products have this safety feature.

22.    Despite the industry standards that ensure that a pressure cooker should not open when under pressure, and Defendant's representations to the same effect, the Products can open under pressure. To maintain pressure, the Products contain a rising float valve, which engages a locking mechanism that prevents one from opening the lid. When the pressure is released, the float valve drops back down, disengaging the locking mechanism. Plaintiff believes that a defective material in the locking mechanism causes it to fail, creating a serious safety risk.

23.    Defendant has known about this Defect, but Defendant did not disclose this Defect to consumers. Not only did Defendant design and manufacture the Products, and was therefore aware of the defects resulting from its efforts, Defendant also received consumer complaints,

---

[2] https://support.ninjakitchen.com/hc/en-us/articles/4403151835538-FD300-Series-Ninja-Foodi-Pro-Pressure-Cooker-FAQs.

warranty claims, and injury reports regarding the Defect. Indeed, Defendant has received over 100 reports of burn injuries, including more than fifty reports of second-degree or third-degree burns to the face or body. Twenty-six lawsuits have been filed.

24.    Defendant should have known about the Defect through normal quality assurance inspection and testing. Pursuant to applicable industry standards, a pressure cooker sold for consumer use should not be constructed in such a way that the lid can be opened by the consumer when the contents of the pot are still under pressure, without the use of a force in excess of 100 pounds. Defendant has a duty to comply with industry standards and to ensure that the Products are not constructed in such a way that the lid can be opened by the user when the contents of the pot are still under pressure, without the use of a force in excess of 100 pounds. This includes quality assurance inspections and testing to assure that the Products that Defendant is selling conform with the industry standards.

25.    On information and belief, Defendant had actual knowledge of the Defect as early as 2019. Defendant neither disclosed the Defect nor issued pre-sale warnings or post-sale warnings, to consumers or purchasers, that some of the Products' lids had been reported to open while the contents were under pressure.

26.    It was only on 1 May 2025, after nearly six years of selling the Products, that Defendant finally recalled the 1,846,400 Products sold in the United States, but, when asked by the press, Defendant refused to answer questions about why scores of serious injuries had to be sustained, and dozens of lawsuits filed, before Defendant issued a recall.[3] Presently, Defendant explicitly warns that consumers should not use the pressure cooking function on the Products, at

---

[3] https://www.consumerreports.org/appliances/appliance-recalls/sharkninja-foodi-multi-cookers-recalled-a5666379349/.

all, until a replacement lid is provided.[4] Thus, Defendant admits that: (a) the Products are not fit for their main purpose and (b) are not safe to use in their current form.

27.    Consumers, including Plaintiff, reasonably relied on Defendant's representations that the Products would not open when under pressure, and that they included basic safety features that an ordinary consumer would expect to accompany any consumer pressure cooker. Defendant misrepresented, concealed, and otherwise omitted material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Product. Defendant intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members. Accordingly, Plaintiff and Class Members: (a) reasonably relied upon Defendant's misrepresentations and concealment of these material facts and (b) suffered monetary injury as a proximate result of that justifiable reliance.

28.    Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Indeed, the Defect (a) can cause serious injury and (b), as conceded by Defendant, renders the Products unsuitable for one of their primary features: pressure cooking.

29.    Plaintiff and the Class Members paid money for the Products, but Plaintiff and the Class Members did not obtain the full value of the advertised/warranted Products due to Defendant's misrepresentations and omissions. Had Plaintiff and Class Members known the truth about the Products, i.e., that they had a serious safety defect, Plaintiff and Class Members would not have purchased them at the price at which they bought the Products. Consequently, Plaintiff

---

[4] https://www.rqa-inc.com/client/SharkNinja/.

and the Class Members have suffered injury in fact and lost money as a result of Defendant's wrongful conduct.

30.    At all relevant times, Defendant, while concealing the Defect, actively and intentionally misrepresented the qualities and characteristics of the Products. Accordingly, Plaintiff's and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

31.    Defendant misrepresented the Products and concealed the Defect to: (a) sell more units of Products, (b) avoid the costs from a recall, and (c) delay Plaintiff and Class Members from suing.

32.    Due to Defendant's intentional misrepresentations and active concealment of and/or failure to inform Plaintiff and Class Members of the Defect, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendant's intentional misrepresentations and active concealment estops it from relying on any statutes of limitations.

33.    Moreover, Plaintiff and Class Members did not discover that the Products had a Defect, until Defendant recalled the Products . Plaintiff and Class Members had no realistic ability to uncover the Products' Defect given that it involved a defect in workmanship or materials in the Products. Defendant's active concealment of the true nature of the Products hampered Plaintiff and Class Members' ability to discover their causes of action.

## CLASS ALLEGATIONS

34.    Plaintiff brings this action on behalf of herself and those similarly situated. Defendant deceptively marketed and labeled its Products' safety. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely

situated for class-wide resolution, including injunctive relief. The Class is defined as:

> All consumers who purchased the Products anywhere in the United States, for personal or household use, during the Class Period (the "Class").

Plaintiff also seek certification, to the extent necessary or appropriate, of a subclass of:

> All consumers who purchased the Products in the state of California, for personal or household use, during the Class Period (the "California Subclass").

Excluded from the Class are all legal entities, Defendant herein and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, as well as any judge, justice or judicial officer presiding over this matter and members of their immediate families and judicial staff.

35.     The proposed Class and California Subclass shall be referred to collectively throughout the Complaint as "the Class."

36.     For the following reasons, the Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

37.     *Numerosity*: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are millions of consumers in the Class and thousands of the California Classes who are Class Members as described above and who Defendant's deceptive and misleading practices damaged.

38.     *Commonality*: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not

limited to:

    a.      Whether Defendant is responsible for the conduct alleged herein, which Defendant uniformly directed at all consumers who purchased the Products;

    b.      Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    c.      Whether Defendant made false and/or misleading statements or omissions to the Class and the public concerning the Defect;

    d.      Whether Defendant's false and misleading statements or omissions concerning their Products were likely to deceive the public;

    e.      Whether Defendant breached any expressed or implied warranties in marketing the Products with the Defect; and

    f.      Whether the law entitles Plaintiff and the Class to money damages/restitution?

39.     *Typicality*: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products and were exposed to the same concealed Defect. The law entitles Plaintiff to relief under the same causes of action as the other Class Members.

40.     *Adequacy*: Plaintiff is an adequate class representative because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, and they have a strong interest in vindicating their rights. Further, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

41.    *Predominance*: Pursuant to Federal Rule of Civil Procedure 23(b)(3), the common issues of law and fact identified above predominate over any other questions that affect only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that the law requires is a narrow focus on Defendant's deceptive and misleading practices and the unform Defect.

42.    *Superiority*: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of over a million of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive, if not totally impossible, to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty that will be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will

eliminate the possibility of repetitious litigation;

h.      Class Members' interest in efficient resolution by single class action outweighs their interests in individually controlling the prosecution of separate actions; and

i.      It would be desirable to concentrate in this single venue the litigation of all class members who Defendants' uniform false advertising induced to purchase their Products.

43.     For two reasons, this Class is properly brought and should be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3). First, questions of law or fact common to Class Members predominate over any questions affecting only individual members. Second, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

44.     The recall only provides a free replacement lid to consumers. But the recall provides neither monetary damages, an offer to allow consumers to return their Products, nor assurances that the free replacement lid will perform as advertised or warranted. Accordingly, the recall does not address the underlying concerns expressed in this lawsuit.

## FIRST CLAIM FOR RELIEF

### Breach of Express Warranty

### (On behalf of the Nationwide Class, or alternatively,

### the California Subclasses)

45.     Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

46.     In connection with its sale of the Products, Defendant expressly provided a one-year limited warranty (the Warranty) that the Products were free from defects in materials and

workmanship. The Warranty stated as follows:

> SharkNinja warrants that the unit shall be free from defects in material and
> workmanship for a period of one (1) year from the date of purchase when it is used
> under normal household conditions and maintained according to the requirements
> outlined in the Owner's Guide[.]

Upon information and belief, each one of the Products has an identical or substantially identical Warranty. Each of the Products' owner's guides includes the Warranty.

47.    Defendant further warrants that: (a) the Products are a pressure cooker and (b) one can use them as such.

48.    The Products are defectively manufactured as alleged, and Defendant's Warranty covers them. Defendant has admitted that: (a) the Products, as sold, are not safe and (b) one cannot use them as pressure cookers.

49.    Plaintiff and the Class Members have privity of contract with Defendant through their purchase of the Products from an authorized retailer as stated in the written Warranty that accompanied the purchase and expressly applies to purchasers of the Products.

50.    Defendant manufactured and marketed the Products.

51.    Plaintiff and the Class Members either: (a) purchased the Products by and through Defendant's authorized sellers for retail sale to consumers or (b) were otherwise expected to be the third-party beneficiaries of Defendant's contracts with authorized sellers, or eventual purchasers, when bought from a third party. Defendant knew or had reason to know of the specific use for which Plaintiff and the Class Members purchased the Products.

52.    The express written Warranty was a material part of the bargain between Defendant

and consumers. At the time it made this express Warranty, Defendant: (a) knew of the purpose for which consumers, including Plaintiff and Class Members, would use the products and (b) designed and intended them to be used for that specific purpose.

53.    Defendant breached its express Warranty by selling a pressure cooker that was neither: (a) free of defects, (b) made for years of safe and dependable operation, (c) made from merchantable material and workmanship, nor (d) capable of being be used for the ordinary purpose of preparing food using pressure cooking at home. Defendant also breached its express written by selling Products that were defective when made and, thus, contained the Defect on the very first day of purchase, creating a serious safety risk to Plaintiff and Class Members.

54.    The Products that Plaintiff and each Class Member purchased were subject to the Defect and caused each of them injury because they would not have purchased the Products had they known of the Defect. Defendant expressly warranted in writing that it would repair or replace any defect in the Products. Additionally, the UCC specifically provides that the damages associated with breach of warranty are the difference between the product as warranted and the product delivered.

55.    Upon information and belief, Defendant received notice and has known of the Defect since at least 2019 through customer warranty claims, consumers reporting problems with the Product, customer complaints, and its own internal and external testing.

56.    But Defendant failed to provide an adequate remedy. Defendant has offered to provide a replacement lid through the recall, but Defendant neither assures consumers that the replacement lid is free from the Defect at issue in this case nor provides reasonable assurance that the problem has been resolved. Accordingly, Plaintiff and the Class seek damages resulting from the Defect.

15

57.     As a result of Defendant's breach of its express written Warranty, Plaintiff and Class Members have suffered damages.

## SECOND CLAIM FOR RELIEF

**Breach of Implied Warranty of Merchantability**

**(On behalf of the Nationwide Class, or alternatively,**

**the California Subclasses)**

58.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

59.     Defendant defectively manufactured the Products purchased by Plaintiff and Class Members, and those Products posed a serious and immediate safety risk to consumers, including Plaintiff and Class Members, and the general public.

60.     All the Products sold by Defendant left Defendant's facilities and control with the Defect in the manufacture of the Products.

61.     The Defect places Plaintiff and Class Members at serious safety and property damage risk upon using the Products in their homes. Defendant admits that one cannot safely use the Products, as sold, as pressure cookers.

62.     The law requires manufacturers or sellers of a product to ensure that the Products: (a) are merchantable and reasonably fit for the ordinary purposes for which ordinary consumers use them and (b) are acceptable in trade for the product description. This implied warranty of merchantability is part of the basis of the bargain between Defendant and purchasers, including Plaintiff and the Class Members.

63.     Defendant breached the implied warranty of merchantability because the Products: (a) are defective and pose a serious safety risk, (b) were not fit for the ordinary purposes for which

they were used, (c) would not pass without objection, and (d) failed to conform to the standard performance of like products. The Defect is substantially certain to manifest during the reasonable expected life of the any one of the Products that does not have the new locking lid assembly.

64.    Defendant knew, or should have known, that the Products posed a safety risk and were defective, and Defendant breached the implied warranties at the time it sold the Products to Plaintiff and Class Members or otherwise placed them into the stream of commerce.

65.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members bought the Products without knowledge of the Defect or the serious safety risk.

66.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members purchased unsafe and defective Products that were not fit for their intended purpose of preparing food in a residential setting.

67.    Defendant received notice of the Defect, and its breaches of express and implied warranties, through: (a) customer warranty claims that reported problems with the Products, (b) customer complaints, and (c) its own testing.

68.    Despite having notice and knowledge of the Defect, Defendant failed to provide: (a) a Defect-free pressure cooker to Plaintiff and Class Members, (b) adequate replacement of the defective Products, and (c) any form of compensation for the economic damages that resulted from the Defect.

69.    Any attempt by Defendant to disclaim the implied warranty was improper, insufficient, and of no effect.

70.    As a direct and proximate result of Defendant's breach of the implied warranties, Plaintiff and Class Members have suffered damages.

## THIRD CLAIM FOR RELIEF

**Breach of Express and Implied Warranty Under the**

**Song-Beverly Consumer Warranty Act**

**(On behalf of the California Subclasses)**

71.     Plaintiff reallege and incorporate by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

72.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code sections 1790, *et seq.*, both a manufacturer's and retail seller's implied warranty that the goods are merchantable accompanies every California sale of consumer goods.

73.     Defendant is in the business of manufacturing, assembling, producing and/or selling the Products to retail buyers, and Defendant therefore is a "manufacturer" and "seller" within the meaning of Cal. Civ. Code section 1791.

74.     By placing the Products into the stream of commerce, Defendant provided Plaintiff and Class Members with implied warranties that the Products were merchantable.

75.     But the Products were not as expressly warranted and were not of merchantable quality because the Products were Defective as alleged herein. Defendant's actions thus constitute a breach of the implied warranty of merchantability.

76.     Plaintiff and Class Members sustained damages as a direct and proximate result of Defendant's breaches in that they paid an amount for the product that they would not have otherwise paid. Plaintiff and the Class also did not receive the value of the product they paid for; due to the breach, the products are worthless, or worth far less, than Defendant represents.

77.     To compensate them for not receiving the benefit of their bargain, Plaintiff and the Class members seek all relief available under the Song-Beverly Act. The law entitles Plaintiff and

Class Members to legal and equitable relief, damages, attorneys' fees, litigation expenses and costs, rescission, and/or other relief as deemed appropriate.

## FOURTH CLAIM FOR RELIEF

### Violations of the Unfair Competition Law

### Cal. Bus. & Prof. Code § 17200 et seq. (UCL)

### (On behalf of the California Subclasses)

78.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

79.     Plaintiff brings this claim individually, and on behalf of the members of the California Subclass, against Defendant.

80.     Defendant is a "business" as defined by Cal. Bus. & Prof. Code section 17200.

81.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code section 17200.

82.     Defendant's conduct is unlawful, in violation of the UCL, because it violates the California Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the common law of warranty and fraud.

83.     Defendant's conduct is unfair, in violation of the UCL, because it violates California public policy, as set forth herein.

84.     Defendant acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner by selling the defective and unsafe Products to consumers. Defendant engaged in unfair business practices and acts in at least four ways. First, Defendant promoted and sold a product it knew was defective because it contains a Defect that constitutes a material and unreasonable safety hazard to consumers. Second, Defendant promoted and sold its

Products with the Defect despite knowing that users do not expect the Products to be a material and unreasonable safety hazard. Third, Defendant failed to disclose that the Products are defective. Fourth, Defendant represented through advertising, its website, product packaging, and other sources that the Products possessed qualities that were inconsistent with Defendant's actual knowledge of the Products.

85.    The gravity of harm resulting from Defendant's unfair conduct outweighs any potential utility.

86.    The harm from Defendant's conduct was not reasonably avoidable by consumers.

87.    Defendant's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer.

88.    As alleged herein, Defendant misrepresented that: (a) its Products had a safety feature, a lid that locked under pressure, when they did not, and (b) the pressure cooker feature could be safely used. On the Products' labels and marketing materials, Defendant represented that consumers could use the Products as pressure cookers. But the pressure cooker was unsafe to use. The recall demonstrates and concedes this.

89.    To consumers, Defendant failed to disclose the Defect's existence. Defendant was under a duty to disclose the omitted information because: (a) the omitted facts were material because they directly impact the safety of the Products; (b) Defendant made partial disclosures about the quality of the Products without revealing the true defective nature; and (c) Defendant actively concealed the defective nature of the Products from Plaintiff and Class Members.

90.    A reasonable consumer would find Defendant's misrepresentation and omissions material because of the concern of a serious safety issue that renders the pressure cooker function of the Products useless. The pressure cooker function was a key selling point for the Products.

91.    Plaintiff and the California Subclass reasonably relied on the existence of key safety features that would allow the pressure cooker function on the Products to be used as such. Without such features, and the ability to use the pressure cooker function as advertised, they would not have purchased the Products.

92.    Plaintiff and California Subclass Members suffered injury in fact, including lost money or property, because of Defendant's unlawful, unfair, and fraudulent acts and omissions. Absent Defendant's unlawful, unfair, and fraudulent conduct, Plaintiff and Class Members would: either (a) not have purchased one of the Products or (b) have returned their Product when they could have done so without penalty.

93.    Plaintiff and California Subclass Members seek restitution if monetary damages are not available. Restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult. But even if damages are available, such relief would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. Unlike damages, the Court's discretion in fashioning equitable relief is very broad. Thus, restitution would allow recovery even when normal consideration associated with damages would not.

**FIFTH CLAIM FOR RELIEF**

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code § 17500 (FAL)**

**(On behalf of the California Subclasses)**

94.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

95.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

96.     California's FAL prohibits any statement or omission in connection with the sale of good "which is untrue or misleading." Cal. Bus. & Prof. Code section 17500.

97.     Defendant misrepresented that: (a) its Products had a safety feature, a lid that locks under pressure, when it did not, and (b) the pressure cooker feature could be safely used. On the Products' labels and marketing materials, Defendant represented that the Products could be used as a pressure cooker. But the pressure cooker was unsafe to use. The recall demonstrates and concedes this.

98.     To consumers, Defendant failed to disclose the Defect's existence. Defendant was under a duty to disclose the omitted information because: (a) the omitted facts were material because they directly impact the safety of the Products; (b) Defendant made partial disclosures about the quality of the Products without revealing the true defective nature; and (c) Defendant actively concealed the defective nature of the Products from Plaintiff and Class Members.

99.     A reasonable consumer would find Defendant's misrepresentations and omissions material because of the concern of a serious safety issue that renders the pressure cooker function of the Products useless. This is especially so because the pressure cooker function was a key selling point for the Products.

100.    Plaintiff and the California Subclass reasonably relied on Defendant's promise of the existence of key safety features that would allow the pressure cooker function on the Products to be used as such. Had they known that such features, and the ability to use the pressure cooker function as advertised, did not exist, they would not have purchased the Products.

101.    Plaintiff and California Subclass Members suffered injury in fact, including lost money or property, because of Defendant's unlawful, unfair, and fraudulent acts and omissions. Absent Defendant's unlawful, unfair and fraudulent conduct, Plaintiff and Class Members either:

(a) would not have purchased a Product or (b) would have returned their Product when they could have done so without penalty.

102.    Plaintiff and California Subclass members seek restitution if monetary damages are not available. Restitution under the FAL can be awarded in situations where the entitlement to damages may prove difficult. Damages would not be adequate to address the injury suffered by Plaintiff and California Subclass Members. The Court's discretion in fashioning equitable relief is very broad. Restitution would thus allow recovery even when normal consideration associated with damages would not.

## SIXTH CLAIM FOR RELIEF

### Violations of the Consumers Legal Remedies Act,

### Cal. Civ. Code section 1750 et seq. (CLRA)

### (On behalf of the California Subclasses)

103.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 44 as though set forth fully herein.

104.    Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

105.    Defendant is a "person" within the meaning of California Civil Code sections 1761(c) and 1770, and Defendant provided "goods" within the meaning of California Civil Code sections 1761(a) and 1770.

106.    With the following actions, Defendant has violated the CLRA:

(a) Representing that the Products had characteristics, uses, and benefits they do not have in violation of Cal. Civ. Code section 1770(a)(5);

(b) Representing that the Products are of a standard, quality, or grade when in fact they

do not in violation of Cal. Civ. Code section 1770(a)(7); and

(c) Advertising the Products with intent not to sell them as advertised in violation of Cal. Civ. Code section 1770(a)(9).

107.    Defendant designed its deceptive practices to induce consumers, including Plaintiff and Class Members, to purchase the Product. Defendant engaged in marketing efforts to reach Class Members and/or third parties on whom it relied to persuade Class Members to purchase the defective Products.

108.    Defendant's unfair competition and deceptive acts and practices harmed Plaintiff and Class Members. Had Defendant disclosed the true nature of its Products, Plaintiff and the Class would not have paid the price they did for the Products.

109.    Plaintiff, on behalf of herself and all other similarly situated consumers, and as appropriate, on behalf of the general public, seeks injunctive relief that: (a) prohibits Defendant from continuing the unlawful practices alleged herein and (b) directs Defendant to make corrective notices both on its website and in other appropriate media.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and for judgment to be entered, against Defendant, by an order that does the following:

A.    certifies the proposed Class–and subclasses, if applicable

B.    designates Plaintiff as the class representative, designates the undersigned as class counsel, and requires Defendant to bear the costs of class notice;

C.    enjoins Defendant from selling the Products until: either (a) they can be safely used as pressure cookers that meet industry standards or (b) full disclosure of the failure to meet industry standards appears on all packaging;

D.      requires Defendant to engage in: (a) a corrective advertising campaign and (b) any further necessary affirmative injunctive relief, such as recalling the existing Products;

E.      awards: (a) declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein and (b) injunctive relief to remedy Defendants' past conduct;

F.      requires Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be: (a) an unlawful, unfair, or fraudulent business act or practice; (b) untrue or misleading advertising; or (c) a violation of law, plus pre-judgment and post-judgement interest thereon;

G.      requires Defendant to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      requires Defendant to pay all actual and statutory damages, permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

I.      requires Defendant to pay punitive damages on any count so allowable;

J.      awards attorneys' fees and costs to Plaintiff and the Classes; and

K.      provides for all other just, proper relief.

## JURY TRIAL DEMANDED

Pursuant to Massachusetts Rule of Civil Procedure 1-038, Plaintiffs demand a trial

by jury of any and all issues in this action so triable of right.

Dated: May 30, 2025                 Respectfully Submitted,

*/s/ Garrett Lee*
Garrett Lee (Bar No. 669603)
glee@forthepeople.com
**MORGAN AND MORGAN, P.A.**
155 Federal Street, Suite 1502
Boston, MA 02110
Tel. (857)383-4906

Nick Suciu III (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: (313)303-3472
nsuciu@milberg.com

Michael F. Ram (*pro hac vice* forthcoming)
mram@forthepeople.com
Marie N. Appel (*pro hac vice* forthcoming)
mappel@forthepeople.com
Colin Losey (*pro hac vice* forthcoming)
colin.losey@forthepeople.com
**MORGAN AND MORGAN
COMPLEX LITIGATION GROUP**
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel: (415) 846-3862

Jason P. Sultzer
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tell: (845) 483-7100
Sultzerj@thesultzerlawgroup.com

*Attorneys for Plaintiff*